Jordan Y. Crosby
James R. Zadick
UGRIN ALEXANDER ZADICK, P.C.
#2 Railroad Square, Suite B
P.O. Box 1746
Great Falls, MT 59403
Telephone: (406) 771-0007
E-mail: jyc@uazh.com; jrz@uazh.com
*Attorneys for Plaintiff Philadelphia Indemnity
Ins. Co.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>*Plaintiff,*<br><br>v.<br><br>RMTC, LLC d/b/a/ ROCKY MOUNTAIN TREATMENT CENTER; MWJQ, INC. F/K/A ROCKY MOUNTAIN TREATMENT CENTER INC.; AETNA HEALTH OF UTAH, INC. a Utah Corporation d/b/a Altius Health Plans Inc.; and MONTANA HEALTH CO-OPERATIVE D/B/A MONTANA HEALTH CO-OP<br><br>*Defendants.* | Case No.  CV-24-19-GF-BMM-JTJ<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

COMES NOW Plaintiff, PHILADELPHIA INDEMNITY INSURANCE

COMPANY ("PIIC"), by and through counsel, and for its Complaint for Declaratory

Judgment against Defendants (1) RMTC, LLC d/b/a Rocky Mountain Treatment

Center ("RMTC"); (2) MWJQ, INC. f/k/a Rocky Mountain Treatment Center Inc. ("MWJQ"); (3) Aetna Health of Utah, Inc., a Utah corporation d/b/a/ Altius Health Plans, Inc. ("Altius"); and (4) Montana Health Co-Operative d/b/a Montana Health Co-Op ("MHC"); states as follows:

## **INTRODUCTION**

1.      This is a declaratory judgment action wherein PIIC seeks a declaration that it has no duty to defend, to advance defense costs, or to indemnify the Defendants herein in connection with the Third-Party Complaint captioned *Aetna Health of Utah, Inc. a Utah corporation, d/b/a Altius Health Plans, Inc., on its own behalf and under assignment of rights from Montana Health co-op, Mental Health Associates, Inc, and Mental Health Network, Inc., v. RMTC, LLC d/b/a/ Rocky Mountain Treatment Center and MWJQ, INC. f/k/a Rocky Mountain Treatment Center Inc.* (the "Altius Third-Party Complaint") that was filed on or about July 25, 2023, in the lawsuit captioned *Montana Health Co-Operative d/b/a Montana Health Co-Op, Plaintiff, v. Aetna Health of Utah, Inc. a Utah corporation, d/b/a Altius Health Plans, Inc., RMTC, LLC, a Montana limited liability company, and DOES 1-10, Defendants* that was filed on or about January 18, 2019, in the Montana Eighth Judicial District Court, Cascade County (Cause No. BDV-19-034) (the "MHC Lawsuit").

2.      PIIC is a Pennsylvania corporation with its principal place of business in Pennsylvania.

3.      Defendant RMTC is a Montana limited liability company with its principal place of business in Montana.  None of RMTC's members are citizens of the state of Pennsylvania.

4.      Defendant MWJQ, previously known as Rocky Mountain Treatment Centers, Inc., is a Montana domestic profit corporation with its principal place of business in Montana.

5.      Defendant Altius is a Utah domestic profit corporation with its principal place of business in Utah.  Altius filed the Third-Party Complaint on its own behalf and under an assignment of rights from Montana Health Co-Op, Mental Health Associates, Inc, and Mental Health Network, Inc.  As the third-party plaintiff in the Third-Party Complaint, Altius is a necessary party to the relief sought herein and is named as a party solely to secure an adjudication binding upon it with regard to the matters alleged herein.

6.      Defendant MHC is a Montana non-profit corporation with its principal place of business in Montana.  As the plaintiff in the MHC Lawsuit, MHC is a necessary party to the relief sought herein and is named as a party solely to secure an adjudication binding upon it with regard to the matters alleged herein.

7.     Pursuant to 28 U.S.C. § 1332(a), this Court has subject matter jurisdiction over this dispute because there is complete diversity between PIIC and Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.     Pursuant to 28 U.S.C. § 1391 and L.R. 3.2(b), venue in this Court is proper because some of the Defendants do business in Cascade County, and this matter arises out of the Altius Third-Party Complaint, which is pending in Cascade County.

9.     Venue in the Great Falls Division is proper because Cascade County is within the Great Falls Division pursuant to L.R. 1.2(c)(3).

**The Policy**

10.     PIIC issued claims-made Private Company Protection Plus Insurance Policy No. PHSD1725573, to Rocky Mountain Treatment Centers, RMTC, LLC DBA Rocky Mountain Treatment Center with a Policy Period of August 26, 2022 to August 26, 2023 (the "Policy").   A true and correct copy of the Policy with confidential premium information redacted is attached hereto as **Exhibit A**.

11.     Of the coverage parts provided in the Private Company Protection Plus form, RMTC purchased coverage solely under Part 2, the Employment Practices Liability Insurance (the "EPL Insurance").

12.     Pursuant to Part 6, COMMON POLICY CONDITIONS, Section I.,

LIMITS OF LIABILITY, B., as amended by the CLAIM EXPENSES COVERED IN ADDITION TO LIMITS OF LIABILITY Endorsement, PI-PRD 121 (04/19), the Policy has a maximum aggregate liability of $1 million for all Damages for Claims made during the Policy Period.

**The Stephen Hamilton Lawsuit against MHNet**

13.    On December 23, 2015, Stephen Hamilton filed a lawsuit captioned *Stephen Hamilton v. MHNet* in the U.S. District Court for the District of Montana Great Falls Division (Case No. CV 15-110-GF-BMM) (the "Hamilton Lawsuit"). On May 6, 2016, Mr. Hamilton filed an amended complaint naming MHNet as the sole defendant.  A copy of the Hamilton Amended Complaint is attached as **Exhibit B**.

14.    The Hamilton Lawsuit alleges that Mr. Hamilton purchased a health insurance policy from MHC and that MHNet provided claim handling services to MHC.

15.    The Hamilton Lawsuit alleges that Mr. Hamilton incurred health care expenses while he was a patient at "Rocky Mountain Treatment Center" and that he submitted the expenses to MHC.

16.    The Hamilton Lawsuit alleges that MHNet reviewed Mr. Hamilton's claim for payment of services and denied his claim on the basis that his treatment

was not medically necessary.  The Hamilton Lawsuit alleges that MHNet acted with malice and Hamilton sought compensatory damages and punitive damages.

17.     The Hamilton Lawsuit settled on or about January 24, 2017, and was dismissed with prejudice per the parties' stipulation of dismissal on February 24, 2017.

## The MHC Lawsuit

18.     On January 18, 2019, MHC filed a Lawsuit captioned *Montana Health Co-Operative d/b/a Montana Health Co-Op, Plaintiff, v. Aetna Health of Utah, Inc. a Utah corporation, d/b/a Altius Health Plans, Inc., RMTC, LLC, a Montana limited liability company, and DOES 1-10, Defendants* in the Montana Eighth Judicial District Court, Cascade County (BDV-19-034).  On June 5, 2019, MHC filed an Amended Complaint against the same defendants.  A copy of MHC's Amended Complaint is attached as **Exhibit C**.

19.     The MHC Lawsuit alleges that, on or about March 29, 2013, MHC executed an administrative services agreement with Altius in which Altius agreed to perform claim management services for MHC.

20.     The MHC Lawsuit alleges that MHNet was the only named defendant in an action brought by "S.H." (referred to herein as Mr. Hamilton) in the United States District Court for the District of Montana, Great Falls, Division Cause No. CV 15-110-GF-BMM, which is the Hamilton Lawsuit.  The MHC Lawsuit alleges

that Mr. Hamilton's claim arose in relation to a bill he received from RMTC. (Ex. C, MHC Amended Complaint ¶¶ 6, 13). The MHC Lawsuit alleges that, on or about January 23, 2017, the Hamilton Lawsuit settled.

21.     The MHC Lawsuit alleges that MHNet performed utilization reviews and denied MHC insured Mr. Hamilton coverage for health care expenses he incurred at RMTC.

22.     The MHC Lawsuit asserts the following causes of actions in the Amended Complaint:

Count I - Declaratory Judgment;

Count II - Breach of Contract;

Count III - Breach of the Implied Covenant of Good Faith and Fair Dealing;

Count IV -Breach of Fiduciary Duty;

Count V - Deceit;

Count VI - Constructive Fraud;

Count VII - Negligence;

Count VIII - negligent misrepresentation;

Count IX - exemplary damages and seeks punitive damages from Altius

Count X - Breach of Contract / RMTC; and

Count XI - Common Law Indemnity

23.     The two counts asserted directly against RMTC in MHC's Amended Complaint are: Count X (Breach of Contract) and Count XI (Common Law Indemnity).

24.     Under Count X, the Amended Complaint alleges that MHC was an intended third-party beneficiary of the contract between MHNet and RMTC and that RMTC's submission of a bill to Mr. Hamilton breached the terms of RMTC's contract with MHNet of which MHC was an intended third-party beneficiary. The Amended Complaint alleges that, as a direct result of RMTC's breach of the contract with MHNet, MHC sustained losses including the fees and costs of defense and 50% of the cost of the settlement of the Hamilton Lawsuit.

25.     Under Count XI, the MHC Lawsuit seeks common law indemnity from RMTC and alleges that MHC was without fault in connection with billing Mr. Hamilton for the services that MHNet determined were not medically necessary and that RMTC had a pre-existing legal relationship with MHC through its provider contracts that obligated RMTC not to bill Mr. Hamilton for services that were not pre-authorized by MHC.

26.     The MHC Lawsuit alleges that RMTC breached its obligation to MHC by billing Mr. Hamilton for services that were not medically necessary and not preauthorized and that as a result MHC incurred significant legal costs and fees and liability for which RMTC must indemnify MHC.

27.    In the MHC Lawsuit, MHC seeks from RMTC the amounts paid by MHC for fees and costs incurred by MHC in defending the Hamilton Lawsuit and amounts paid to settle Hamilton Lawsuit.

28.    On or about September 13, 2022, MHC and Altius filed a Stipulation to Dismiss with Prejudice MHC's claims against Altius in the MHC Lawsuit.

**The Altius Third-Party Complaint**

29.    On or about June 8, 2022, Altius filed a motion for leave to file a Third-Party Complaint against RMTC and MWJQ in the MHC Lawsuit.  In the Motion, Altius stated that MHC and Altius settled their claims and that, as part of the settlement, MHC assigned all of its rights, title, and interest in its claims to Altius and in and to any recovery to Altius.  A copy of Altius's motion for leave to file a Third-Party Complaint is attached as **Exhibit D**.

30.    In the Motion, Altius stated that RMTC had yet to be served with the MHC Lawsuit or file an appearance in the MHC Lawsuit and therefore RMTC was a third-party to the MHC Lawsuit.  Altius further stated that MWJQ was not named as a defendant in the MHC Lawsuit.  Altius further stated that for Altius to pursue its claims against RMTC and MWJQ, it was seeking leave to file a Third-Party Complaint against RMTC and MWJQ under Rule 14(a)(1) of the Montana Rules of Civil Procedure.

31.    On or about July 25, 2023, Altius filed the Third-Party Complaint against RMTC and MWJQ and alleged that MHA and MHNet are affiliates of Altius, and that MHA and MHNet assigned their respective rights against RMTC to Altius pursuant to a settlement agreement and that Altius is acting as assignee of all losses, damages, and costs incurred by MHA and MHNet.  A copy of Altius's Third-Party Complaint is attached as **Exhibit E**.

32.    The Altius Third-Party Complaint asserts that it is seeking a declaratory judgment for damages and other relief arising from RMTC's alleged breach of RMTC's obligations under a Family Network Participation Agreement (the "Participation Agreement") with MHA related to the alleged improper billing of services to a member of an MHC health plan.

33.    The Altius Third-Party Complaint alleges that MHA, MHNet, Altius and MHC incurred losses, damages and costs associated with a MHC member's lawsuit.  (Ex. E, Altius Third-Party Complaint, ¶ 8).  The MHC member's lawsuit is referring to the Hamilton Lawsuit.[1]

34.    The Altius Third-Party Complaint alleges that MHA and RMTC entered into a Participation Agreement whereby RMTC became a Participating Provider in a MHNet-administered network (the "Facility Network").  The Altius

---

[1]    As the MHC member is Mr. Hamilton, the "MHC member" will be referred to hereinafter as Mr. Hamilton.

Third-Party Complaint contends the Participation Agreement was effective between MHA, MHNet, and RMTC and that RMTC agreed to abide by the terms and conditions of being a Participating Provider.

35.     The Altius Third-Party Complaint alleges that MHNet administers and provides the Facility Network for MHC's members, and the Facility Network provides services to members of MHC.  The Altius Third-Party Complaint further alleges that MHA is an affiliate of MHNet and is an intended third-party beneficiary of the Participation Agreement.

36.     The Altius Third-Party Complaint alleges that despite knowing that precertification of Mr. Hamilton's treatment at RMTC was denied and therefore was not a covered service under the MHC plan, RMTC continued its treatment of Mr. Hamilton on an inpatient basis without first reviewing the financial terms and conditions of the stay and securing Mr. Hamilton's agreement in writing.

37.     The Altius Third-Party Complaint alleges that despite notice from MHNet that Mr. Hamilton was to be held financially harmless for the treatment pursuant to the Participation Agreement, upon Mr. Hamilton's discharge from RMTC, on or around July 30, 2015, RMTC had Mr. Hamilton sign a promissory note to cover his stay at RMTC.

38.     The Altius Third-Party Complaint alleges that due to RMTC's violation of the Participation Agreement in pursuing payment from Mr. Hamilton, Mr.

Hamilton filed a lawsuit against MHNet and MHC and, as a result of the lawsuit, MHA, MHNet, Altius, and MHC collectively incurred losses, damages, and costs.

39.    The Altius Third-Party Complaint alleges that MHNet and MHC informed RMTC of Mr. Hamilton's lawsuit and sent numerous requests and formal demands to RMTC for indemnification pursuant to the Agreement and that the most recent demand for indemnification was sent to RMTC on or around July 26, 2017, to which RMTC did not respond.

40.    The Altius Third-Party Complaint alleges that on or about September 9, 2019, Altius paid MHC for the losses, damages, and costs MHC incurred as a result of RMTC's breaches, acts, or omissions, and MHC assigned Altius all rights, title, and interest in and to the recovery of the amounts MHC paid.

41.    The Altius Third-Party Complaint alleges that MHC's losses, damages, and costs were caused by the actions and omissions of RMTC and RMTC's breach of the Participation Agreement.

42.    The Altius Third-Party Complaint alleges that RMTC agreed to indemnify MHNet for any losses, damages, or costs that have been determined by settlement or adjudication to have resulted from or arisen out of acts or omissions of RMTC, its employees, or agents, related to RMTC's obligations under the Agreement.  The Altius Third-Party Complaint further alleges that RMTC failed and

refused to reimburse MHNet for those costs and expenses incurred in the Hamilton Lawsuit.

43. The Altius Third-Party Complaint asserts five causes of action: (1) Breach of Contract, (2) Breach of Implied Covenant of Good Faith and Fair Dealing, (3) Declaratory Judgment, (4) Negligence, and (5) Tortious Interference with Contract.

44. Under Count I (Breach of Contract), the Altius Third-Party Complaint alleges that RMTC and/or MWJQ, acting as RMTC, breached the Participation Agreement by treating Mr. Hamilton without obtaining precertification, continuing to treat Mr. Hamilton after precertification was denied, charging Mr. Hamilton for the services that were denied at precertification, by balance billing Mr. Hamilton, and by overcharging Mr. Hamilton for the services RMTC provided.

45. Under Count II (Breach of Implied Covenant of Good Faith and Fair Dealing), the Altius Third-Party Complaint alleges that the Participation Agreement contains an implied covenant of good faith and fair dealing and that RMTC and/or MWJQ, acting as RMTC, breached the implied covenant of good faith and fair dealing by treating Mr. Hamilton without obtaining precertification, continuing to treat Mr. Hamilton after precertification was denied, charging Mr. Hamilton for the services that were denied at precertification, by balance billing Mr. Hamilton, and by overcharging Mr. Hamilton for the services RMTC provided.

46.     Under Count III (Declaratory Judgment Act), the Altius Third-Party Complaint seeks a final judgment declaring that RMTC and/or MWJQ, acting as RMTC, is required to indemnify Altius fully for the losses, damages, and costs (including reasonable attorneys' fees) incurred by MHA, MHNet, and MHC in the lawsuit, the costs to settle the lawsuit, and the costs and expenses incurred by Altius in bringing the Third-Party Complaint.

47.     Under Count IV (Negligence), the Altius Third-Party Complaint alleges that RMTC and/or MWJQ acting as RMTC, had a duty to exercise reasonable care in the processing, handling and submissions of Mr. Hamilton's claim for benefits and that RMTC breached their duty by, among other things, treating Mr. Hamilton without obtaining precertification, continuing to treat Mr. Hamilton after precertification was denied, charging Mr. Hamilton for the services that were denied at precertification, by overcharging Mr. Hamilton for the services provided, and by inconsistently billing Mr. Hamilton and MHNet.

48.     Under Count V (Tortious Interference with a Contract), the Altius Third-Party Complaint alleges that RMTC and/or MWJQ, acting as RMTC, intentionally and willfully treated Mr. Hamilton without obtaining precertification, continued to treat Mr. Hamilton after precertification was denied, charged Mr. Hamilton for the services that were denied at precertification, overcharged Mr.

Hamilton for the services provided, and inconsistently billed Mr. Hamilton and MHNet.

49.     The Altius Third-Party Complaint seeks (1): A declaration that RMTC and/or MWJQ, acting as RMTC, is required to indemnify Altius, as assignee to MHA, MHNet, and MHC, fully for the defense costs incurred by MHA, MHNet, and MHC in the Hamilton Lawsuit and the costs to settle the lawsuit, and the costs and expenses incurred by Altius in bringing the third-party action; (2) Compensatory damages in an amount to be determined at trial; (3) For damages resulting from RMTC and/or MWJQ's, acting as RMTC; (4) Costs, interest, and attorneys' fees; and (5) Any other relief this Court may deem just and appropriate under the circumstances.

50.     On August 23, 2023, PIIC first received notice of the Altius Third-Party Complaint when it received a copy of the Third-Party Complaint from the broker for RMTC, Arthur J. Gallagher Risk Management Services, LLC.

51.     On August 25, 2023, PIIC advised RMTC that it received submission of the Altius Third-Party Complaint and was beginning its initial investigation of the claim but that it appeared that the Policy did not provide coverage for the Altius Third-Party Complaint.

52.    On September 12, 2023, counsel for PIIC requested additional information from counsel for RMTC and MWJQ concerning the Altius Third-Party Complaint.

53.    On September 14, 2023, counsel for PIIC confirmed with counsel for RMTC and MWJQ that she would file a responsive pleading on behalf of RMTC and MWJQ to the Altius Third-Party Complaint or secure an extension.

54.    On September 18, 2023, counsel for PIIC advised counsel for RMTC and MWJC that PIIC believed that the Policy did not afford coverage for the Altius Third-Party Complaint but that PIIC would advance defense costs to RMTC and MWJQ subject to a reservation of rights and would file a Declaratory Judgment action to determine its obligations under the Policy for the Third-Party Complaint.

55.    On September 19, 2023, counsel for RMTC and MWJC provided counsel for PIIC additional information concerning the Altius Third-Party Complaint.

56.    On November 14, 2023, counsel for PIIC and counsel for RMTC and MWJQ spoke about the status of the Altius Third-Party Complaint.  Counsel for PIIC advised counsel for RMTC and MWJQ that PIIC would be issuing its coverage position letter to her attention.

57.    On December 4, 2023, PIIC (through counsel) issued a letter to defense counsel for both RMTC and MWJQ, setting forth PIIC's position that the Altius

Third-Party Complaint does not trigger coverage under the Policy's Part 2, Employment Practices Liability Insurance, which is the sole coverage part purchased by RMTC under the Policy.  In addition, the letter advised that the Policy does not afford coverage for MWJQ because it is not an Insured under the Policy.  A true and correct copy of the December 4, 2023, letter is attached hereto as **Exhibit F**.

58.    In the letter, PIIC agreed to advance Defense Costs to RMTC and MWJQ for the Altius Third-Party Complaint subject to the Policy's $10,000 Retention and under a reservation of all of its rights, remedies and defenses under the Policy, the law and in equity with respect to the Altius Third-Party Complaint, and stated that PIIC will be filing a declaratory judgment action to determine its obligations under the Policy for the Altius Third-Party Complaint.

## COUNT I — DECLARATORY JUDGMENT UNDER 28 U.S.C. § 2201

### THE THIRD-PARTY COMPLAINT DOES NOT TRIGGER COVERAGE UNDER THE EPL INSURANCE

59.    PIIC repeats and realleges Paragraphs 1 to 58 as Paragraph 59, as if set forth fully herein.

60.    Under Part 4, COMMON POLICY DEFINITIONS, Item H., the Policy defines "Insured" to mean "the Private Company and Individual Insured," and under Part 4., Item L., the Policy defines "Private Company," in pertinent part to mean "1. the Named Corporation, and 2. any Subsidiary."

61.     The term "Named Corporation" is defined under Part 4., Item K. of the Policy to mean "the first entity named in Item 1 of the Declarations Page."

62.     The term "Subsidiary" is defined under Part 4., COMMON POLICY DEFINITONS, Item Q., as amended by the Private Company Enhancement Endorsement, PI-PRD 126 MT (07/19) (the "PC Endorsement"), to mean:

    1.    any entity other than a partnership or joint venture of which the Named Corporation owns on or before the inception of the Policy Period more than 50% of the issued and outstanding voting stock either directly, or indirectly through one or more of its Subsidiaries or the right to elect, appoint or designate more than 50% of such entity's board of directors, trustees, or managers and which is set forth in the Application;

    2.    any entity other than a partnership or joint venture which becomes a Subsidiary during the Policy Period and whose assets total less than 40% of the total consolidated assets of the Named Corporation as of the inception date of this Policy Period;

    3.    any entity other than a partnership or joint venture which becomes a Subsidiary during the Policy Period other than a corporation described in paragraph 2. above, but only upon the condition that within 90 days of its becoming a Subsidiary, the Named Corporation shall have provided the Underwriter with full particulars of the new Subsidiary and agreed to any additional premium and/or amendment of the provisions of this Policy

required by the Underwriter relating to such new Subsidiary.

Any entity other than a partnership or joint venture becomes a Subsidiary when the Named Corporation owns more than 50% of the issued and outstanding voting stock, either directly, or indirectly through one or more of its Subsidiaries.  An entity ceases to be a Subsidiary when the Named Corporation ceases to own more than 50% of the issued and outstanding voting stock, either directly, or indirectly through one or more of its Subsidiaries. Coverage for Claims made against any Subsidiary or the Individual Insureds of any Subsidiary shall only apply to Wrongful Acts of such Subsidiary or the Individual Insureds of such Subsidiary occurring after the effective time that such Subsidiary becomes a Subsidiary.  If before or during the Policy Period an entity ceases to be a Subsidiary, then coverage for such Subsidiary shall remain in force, but only for Claims made during the Policy Period for Wrongful Acts occurring prior to the time that such Subsidiary ceased to be a Subsidiary.

63.    The first entity named in Item 1 of the Policy's Declarations Page is "Rocky Mountain Treatment Centers, RMTC, LLC DBA Rocky Mountain Treatment Center."  As such, RMTC is an Insured under the Policy as it is the Named Corporation.

64.    MWJQ is neither a "Named Corporation," nor a "Subsidiary" as defined by the Policy.  As MWJQ is neither the "Named Corporation" nor a "Subsidiary", MWJQ is not an "Insured" under the Policy.

65.    Under Part 2, the EPL Insurance, Section I., INSURING AGREEMENT, the Policy provides that "the Underwriter shall pay on behalf of the Insured, Loss from Claims made against the Insured during the Policy Period (or, if applicable, the Extended Reporting Period), and reported to the Underwriter pursuant to the terms of this Policy, for an Employment Practice Act."

66.    The term "Wrongful Act" is defined, in relevant part, under Part 4, COMMON POLICY DEFINITIONS, Item T., as "[w]ith respect to Part 2, any Employment Practice Act[.]"

67.    The term "Employment Practice Act" is defined under Part 2, the EPL Insurance, Section II., Item A., as amended by the PC Endorsement, as follows:

Employment Practice Act means any actual or alleged:

1.    wrongful dismissal, discharge or termination of employment;

2.    breach of a written or oral employment contract or implied employment contract;

3.    employment related misrepresentation;

4.    wrongful failure to promote;

5.    violation of employment discrimination laws (including harassment);

6.      wrongful deprivation of a career opportunity;

7.      employment related wrongful discipline;

8.      negligent employee evaluation, training or supervision;

9.      employment related invasion of privacy;

10.     employment related defamation (including libel and slander);

11.     workplace harassment of any kind, including sexual;

12.     hostile work environment;

13.     constructive discharge of employment;

14.     employment related Retaliation;

15.     employment related humiliation;

16.     wrongful demotion;

17.     negligent reassignment;

18.     negligent hiring or retention;

19.     failure to grant tenure;

20.     failure to provide or enforce consistent employment policies and procedures;

21.     failure to employ;

22.     workplace bullying;

23.   violation of any federal, state or local civil rights laws;

24.   acts described in 1. through 23. above, arising from the use of the Private Company's internet, e-mail, telecommunications or similar systems including communications on social media networks and committed or attempted by an Individual Insured in his/her capacity as an Individual Insured or by the Private Company.

Solely with respect to any Claim brought by or on behalf of any Third Party, Employment Practice Act means any actual or alleged wrongful failure to employ, discrimination, harassment or violation of such Third Party's civil rights in relation to such wrongful failure to employ, discrimination or harassment, whether direct, indirect, or unintentional, committed by an Individual Insured in his/her capacity as an Individual Insured or by the Private Company.

68.   The term "Third Party" is defined under the EPL Policy, as amended by the PC Endorsement, as "any natural person who is not an Employee of the Private Company."

69.   Under Part 4, COMMON POLICY DEFINITIONS, Item B., as amended by the PC Endorsement, the Policy defines "Claim" to mean any of the following:

1.   A written demand for monetary or non-monetary relief;

2.   A judicial or civil proceeding commenced by the service of a complaint or similar pleading;

3.    A criminal proceeding commenced by a return of an indictment;

4.    A formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigation order or similar document, including, but not limited to, proceedings before the Equal Employment Opportunity Commission or any similar government agency;

5.    An arbitration or mediation or other alternative dispute resolution proceeding if the Insured is obligated to participate in such proceeding or if the Insured agrees to participate in such proceeding, with the Underwriter's written consent, such consent not to be unreasonably withheld;

6.    Solely with respect to Part 3 (Fiduciary Liability Insurance), a written notice of commencement of an investigation by the Department of Labor or the Pension Benefit Guaranty Corporation;

against an Insured for a Wrongful Act, including any appeal therefrom; or

7.    a written request received by an Insured to toll or waive a statute of limitations, relating to a potential Claim as described above.

8.    an official request for Extradition;

9.    solely when used in reference to the coverage provided by INSURING AGREEMENT A., INDIVIDUAL LIABILITY COVERAGE, any service of a subpoena or similar written request upon an Individual Insured compelling witness testimony or document production in

connection with the matters described Paragraphs B 1. through B. 8 above or with any equivalent action against a Private Company or Outside Entity, in which case, the Underwriter will pay the Defense Costs incurred solely by such Individual Insured in responding to such subpoena or written request.

However, Claim shall not include a labor or grievance proceeding pursuant to a collective bargaining agreement.

A claim shall be considered made when an Insured first receives notice of the Claim.

For 8. above, the following is added to Part 1, II. Definitions

Extradition means [  ] any formal process by which an Individual Insured located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation, or the execution of a warrant for the arrest of an Individual Insured where such execution is an element of Extradition.

70.    Under Part 2, Section II., DEFINITIONS, A., as amended by the PC Endorsement, the Policy lists, in items 1. through 24., acts that constitute an "Employment Practice Act," in relevant part, "when committed or attempted by an Individual Insured in his/her capacity as an Individual Insured or by the Private Company."

71.    The first full paragraph set forth in the definition of "Employment Practice Act" under Part 2, Section II., DEFINITIONS, A. following items 1. through 24., states as follows:

Solely with respect to any Claim brought by or on behalf of any Third Party, Employment Practice Act means any actual or alleged wrongful failure to employ, discrimination, harassment, or violation of such Third Party's civil rights in relation to such wrongful failure to employ, discrimination or harassment, whether direct, indirect, or unintentional, committed by an Individual Insured in his/her capacity as an Individual Insured or by the Private Company.

72.     The Altius Third-Party Complaint does not allege any acts that fall within the Policy's definition of "Employment Practice Act."

73.     The Altius Third-Party Complaint does not assert that RMTC committed any acts listed in 1. through 24. of the definition of "Employment Practice Act."

74.     The Altius Third-Party Complaint does not assert that MWJQ committed any acts listed in 1. through 24. of the definition of "Employment Practice Act."

75.     The Altius Third-Party Complaint does not allege an "Employment Practice Act" as defined by the Policy "[s]olely with respect to any Claim brought by or on behalf of any Third Party."

76.     Altius is not a "Third Party" as defined by Part 2, Section II., DEFINITIONS, C., as amended by the PC Endorsement, because Altius is not "any natural person" and therefore is not "any natural person who is not an Employee of the Private Company." As such, the Altius Third-Party Complaint does not assert an "Employment Practice Act" as it does not assert that either RMTC or MWJQ

committed a "wrongful failure to employ, discrimination, harassment or violation of such Third Party's civil rights in relation to such wrongful failure to employ, discrimination or harassment."

77.    To constitute a "Claim" as set forth in items 1. through 6. of the definition of "Claim" under the Policy the demand or proceeding must be, in relevant part, "against an Insured for a Wrongful Act."

78.    The Altius Third-Party Complaint does not allege a Wrongful Act as defined by the Policy against either RMTC or MWJQ.  As a result, the Third-Party Complaint does not constitute a "Claim" as set forth in items 1. through 5. of the definition of "Claim".

79.    Under the Policy, item number 6. of the definition of Claim applies "solely with respect to the Part 3 (Fiduciary Liability Insurance) …."  RMTC purchased only the Part 2, EPL Insurance and did not purchase the Part 3, Fiduciary Liability Insurance.  As RMTC did not purchase the Part 3, Fiduciary Liability Insurance and as the Altius Third-Party Complaint is not otherwise a "…written notice of commencement of an investigation by the Department of Labor or the Pension Benefit Corporation;…", the Third-Party Complaint does not constitute a "Claim" as set forth in item 6. of the definition of "Claim".

80.    The Altius Third-Party Complaint does not constitute a "Claim" as set forth in items 7. or 8. of the definition of "Claim", as it is not respectively, a written

request received by an Insured to toll or waive a statute of limitations, relating to a potential Claim as otherwise described in the definition of "Claim", or an official request for Extradition.

81.    The Altius Third-Party Complaint does not constitute a "Claim" as set forth in item 9. of the definition of "Claim", which applies "solely when used in reference to the coverage provided by INSURING AGREEMENT A., INDIVIDUAL LIABILTIY COVERAGE…", which is set forth in the Part 1, DIRECTORS AND OFFICERS LIABILITY INSURANCE,  Section I. INSURING AGREEMENTS, A. INDIVIDUAL LIABILITY COVERAGE.

82.    The INSURING AGREEMENT of Part 2., the EPL Insurance affords coverage for ". . . Loss from Claims made against the Insured during the Policy Period . . . for an Employment Practice Act."   Because the Altius Third-Party Complaint does not assert an "Employment Practice Act" against an Insured, and given that the Altius Third-Party Complaint does not constitute a "Claim" against an Insured, the Third-Party Complaint does not trigger coverage under Part 2, the EPL Insurance.

83.    Because the Altius Third-Party Complaint does not trigger coverage under Part 2, the EPL Insurance, and RMTC purchased coverage solely under that Part 2, the Policy does not afford coverage for the Altius Third-Party Complaint.

84.    Defendants, however, deny that PIIC has no duty under the Policy to defend, advance defense costs, or to indemnify any of the Defendants herein in connection with the Altius Third-Party Complaint.

85.    An actual controversy exists between the Parties and this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as it deems necessary under the facts and circumstances.

86.    PIIC requests the Court declare that PIIC has no duty under the Policy to defend, to advance Defense Costs, or to indemnify Defendants in connection with the Altius Third-Party Complaint.

## COUNT II — DECLARATORY JUDGMENT UNDER 28 U.S.C. § 2201

### MWJQ IS NOT AN INSURED UNDER THE POLICY

87.    PIIC repeats and realleges Paragraphs 1 through 86 as Paragraph 87, as if set forth fully herein.

88.    MWJQ is neither the "Named Corporation," nor a "Subsidiary" as defined by the Policy.

89.    Because MWJQ is neither the "first entity named in Item 1 of the Declarations Page," nor a "Subsidiary" of RMTC as defined by the Policy, MWJQ is not an "Insured" under the Policy.

90.    Because MWJQ is not an Insured under the Policy, the Policy does not afford coverage for MWJQ for the MHC Lawsuit or the Altius Third-Party Complaint.

91.    Defendants, however, deny that MWJQ is not an Insured, and assert that MWJQ is an Insured under the Policy.

92.    An actual controversy exists between the Parties and this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as it deems necessary under the facts and circumstances.

93.    PIIC requests the Court declare that PIIC has no duty under the Policy to defend, to advance Defense Costs, or to indemnify Defendants in connection with the Altius Third-Party Complaint.

## <u>COUNT III — DECLARATORY JUDGMENT UNDER 28 U.S.C. § 2201</u>

### OTHER TERMS, CONDITIONS, AND EXCLUSIONS LIMIT COVERAGE UNDER THE POLICY IN PART OR IN WHOLE

94.    PIIC repeats and realleges Paragraphs 1 through 93 as Paragraph 94 as if set forth fully herein.

95.    This Count is pleaded in the alternative.

96.     Other terms, conditions, and exclusions contained in the Policy may limit or preclude coverage for the Altius Third-Party Complaint in part or in whole. These include:

(a)     The Policy's definition of "Loss" contained in Part 4, COMMON POLICY DEFINITIONS, Item J., as amended by the PC Endorsement;

(b)     The Policy's definition of "Damages" contained in Part 4, COMMON POLICY DEFINITIONS, Item C.;

(c)     The Policy's Part 5, COMMON POLICY EXCLUSIONS, Section A. and B., as amended by the PC Endorsement;

(d)     The Policy's Part 6, COMMON POLICY CONDITIONS, Section XIX., ALLOCATION; and

(e)     The Policy's Medical Malpractice Exclusion, PI-PRD-63 (09/02).

97.     Defendants, however, deny that coverage does not exist in full for the Altius Third-Party Complaint.

98.     An actual controversy exists between the Parties and this Court is vested with the power to declare the rights and liabilities of the Parties hereto and to give such other and further relief as it deems necessary under the facts and circumstances.

100.   PIIC requests the Court declare that PIIC has no duty under the Policy to defend, to advance Defense Costs, or to indemnify Defendants in connection with the Altius Third-Party Complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, PIIC requests the following relief:

(1)   For a declaration that that PIIC has no duty under the Policy to defend, to advance Defense Costs, or to indemnify Defendants in connection with the Altius Third-Party Complaint;

(2)   For an award of PIIC's attorney's fees and costs in this action; and

(3)   Awarding PIIC such other and further relief as the Court may deem just and proper.

DATED this 13th day of February, 2024.

UGRIN ALEXANDER ZADICK, P.C.


 /s/ *Jordan Y. Crosby*
Jordan Y. Crosby
*Attorneys for Plaintiff Philadelphia
Indemnity Ins. Co.*